(No. 3627—)

EUREKA-MARYLAND ASSURANCE CORPORATION, A CORPORATION,

Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 12, 1942.*
*Rehearing denied September 9, 1942.*
*Supplemental opinion filed March 9, 1943.*
*Rehearing denied April 15, 1943.*

ECKERT & PETERSON, for claimant.

GEORGE F. BARRETT, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

FISHER, J.

The complaint alleges that claimant is a Maryland corporation doing business in Illinois; that on March 14, 1941 it paid the Director of Insurance of the State of Illinois the sum of Three Hundred Dollars ($300.00), which was the statutory license fee under the Illinois Insurance Code for a certificate of authority for a foreign or alien corporation to do business in the State of Illinois during the period July 1, 1941 to June 30, 1942.

Claimant further alleges that the license fee of the State of Maryland for a certificate of authority to do business in that state for such a corporation as claimant, was at the time of said payment, fixed at the sum of Three Hundred Dollars ($300.00), and that by virtue of Section 444 of the Illinois Insurance Code, which provided for retaliation against such

states as were charging Illinois companies for a certificate of authority to do business there, the fee for such certificate in the State of Illinois was fixed in a like amount—that is, Three Hundred Dollars ($300.00).

That subsequent to the payment of said Three Hundred Dollars ($300.00) by claimant, the laws of the State of Maryland applying to foreign and alien insurance companies were, commencing June 1, 1941, amended, and that said amendment provided for a tax of Ten Dollars ($10.00) for the privilege of doing business in that state in lieu of the previous tax of Three Hundred Dollars ($300.00).

Claimant further alleges that the Three Hundred Dollar ($300.00) tax paid by it to the State of Illinois as aforesaid, although paid on March 14, 1941, was not due until July 1, 1941, and inasmuch as the laws of the State of Maryland had been amended, reducing the set license fee from Three Hundred Dollars ($300.00) to Ten Dollars ($10.00), their fee for the Illinois certificate of authority should properly have been Ten Dollars ($10.00), and it therefore paid Two Hundred Ninety Dollars ($290.00) in excess of the proper tax.

The record in this case consists of the complaint, motion to dismiss of the Attorney General, on behalf of respondent, and respondent's statement, brief and argument filed in support of motion to dismiss.

There appears to be no dispute as to the facts, and had the claimant waited until June to make the tax payment, the amount due under the law would have been Ten Dollars ($10.00) instead of Three Hundred Dollars ($300.00). The precise question to be decided by this court is, whether claimant having promptly paid its license fee several months before it was legally due, should now be penalized Two Hundred Ninety Dollars ($290.00) for its diligence in the matter. The Attorney General, on behalf of respondent, takes the position that

"Where no objection is made to any assessment of privilege tax against an insurance corporation, and payment of such tax is made without protest and with the belief that the amount was legally due, and that no fraud, deceit or coercion was used to induce the payment, such payment will be deemed to have been made voluntarily, and in the absence of a statute authorizing a recovery, cannot be recovered back."

Ohio Casualty Ins. Co. vs. State, 6 C. C. R. 504.
Metropolitan Life Ins. Co. vs. Boys, 296 Ill. 166.

and that

"A tax voluntarily paid with full knowledge of the facts cannot be recovered back in the absence of a statute authorizing such recovery."

*Kanaley & Co.* vs. *Gill*, 363 Ill. 418.

*American Can Co.* vs. *Gill*, 364 Ill. 254.

*Handy Button Machine Co.* vs. *State*, 10 C. C. R. 22.

*St. Louis Fire & Marine Ins. Co.* vs. *State*, 11 C. C. R. 195.

and that

"Where one pays the license fee without any compulsion or duress which the law did not compel him to pay, such payment is voluntary, and made under a mistake of law and cannot be recovered."

*Oswald Jaeger Baking Co.* vs. *State*, 11 C. C. R. 119.

In a number of cases cited, the question of assessments was involved, with the right of the taxpayers to object to the assessment and obtain relief, and in these cases the taxpayer did not avail himself of the remedies which the law provided, and, having slept on his rights, was properly estopped from later obtaining relief. There is a growing tendency to apply the principle of law by which tax relief in such cases is denied to other cases with a different set of facts, resulting in the retention of excess payments by tax collecting bodies.

There is a difference between the case at bar and cases where assessments are made and taxpayers are given the right to protest and are afforded a legal remedy to protect their rights. If they then sleep on their rights, they have only themselves to blame. Because of the complication of assessing, tax levying, tax collection and allocation of funds collected, there must be some terminal point if governmental agencies are to be in a position to function with some degree of financial stability. It is also necessary that tax collecting and tax spending bodies act within their legal and statutory authority. Often the courts are powerless to give relief, even though the claim is equitable, because of the absence of statutory authority.

In the tax and license fee laws numerous safeguards are enacted and penalties inflicted to compel the taxpayer to pay his tax promptly. A certain high morality is demanded of the taxpayer, and it certainly is a sound principle of law to say that as high or a higher degree of morality should be exercised by the governmental agency collecting the tax. It is, of course, necessary that tax collecting bodies must not act beyond the authority conferred on them by statute or reasonably implied therefrom, but it is also true that the court should not lean backward, so to speak, to decide against

the taxpayer where, in fairness, the taxpayer should be entitled to a refund and who has been diligent and has not slept on his rights. If claimant had waited until June to make the tax payment, which it had a right to do, the amount would have been Ten Dollars ($10.00), and if the court should sustain this motion to dismiss, it would in fact, be penalizing the taxpayer for being prompt in its discharge of an obligation to the State. The court will grant the tax was voluntarily paid, but not with full knowledge of the facts, as claimant was not in a position to know that the State of Maryland would change its law prior to the beginning of the tax period, or July 1st. A case of this kind is entirely different than one where a yearly franchise fee is paid and, subsequent to the beginning of the period in question, the fee is raised or lowered by statute, or where an assessment is made and remedies are provided for the taxpayer to protest against his assessment.

This court has repeatedly decided that there must be some basis in law or equity on which to base its awards, rather than on the broad principle of equity and good conscience; but this court is also in the unique position in that it not only has original jurisdiction in the cases it hears, but that there is no appeal from its decisions. It, therefore, enjoys a considerable degree of latitude in applying principles of law to the facts present in cases before it, and does not necessarily have to follow a line of decisions if, in the opinion of the court, they have been wrongfully applied or would not be fairly applied to a case at bar.

The court is of the opinion that where a franchise fee is paid before it is due and is subsequently reduced before it is legally due and payable, that a refund for the excess payment should be made to the taxpayer.

We presume in the instant case that the Department of Insurance of the respondent, when claimant's money was received, transferred it to the general funds of the State, and had no express legislative authority or appropriation from which the Department of Insurance could legally pay the claim in question, and without such legislative authority, of course, could not honor and pay the claim. This does not, however, prevent this court from allowing a claim or making an award, as the Legislature could, at some subsequent ses-

sion, pass an appropriation from which the claim or award could be paid.

The motion of respondent to dismiss this claim is denied, and respondent is allowed thirty (30) days in which to answer the complaint herein.

### SUPPLEMENTAL OPINION.

FISHER, J.

This claim now comes before the court for decision on its merits. The issues involved were discussed at some length in the opinion filed herein denying a motion by respondent to dismiss the claim.

Claimant seeks a refund of Two Hundred Ninety Dollars ($290.00) overpayment of license fees and, the facts as stated in the complaint are, in substance, admitted by stipulation.

Subsequent to the filing of our opinion denying the motion to dismiss, a stipulation was filed by the parties hereto, by and through respective counsel, which stipulation contains copy of a letter dated August 26, 1941, from W. E. Wingert, Assistant Supervisor, Tax Division, to Hon. George F. Barrett, Attorney General, which letter is, in part, as follows:

"On or about February 1, in accordance with its usual practice, the Insurance Department submitted its statement for annual fees to the above named company, which fees were assessed on the retaliatory basis.

"The records of this Department show that on March 14 the company paid their annual fee in the total amount of $329.00.

"On May 13, this Department received correspondence from the State Insurance Department of Maryland stating that Maryland had amended their insurance tax laws to reduce the fee for Certificate of Authority to $10.00, and that the amendment was approved on April 18th to become effective June 1, 1941 and apply to the renewal of company licenses expiring June 30, 1941.

"From the above you can see that the annual fees in this instance were paid prior to the passage of the amendment but that, also, the amendment was passed prior to the licensing date. Thus it is a peculiar circumstance of dates. For your information, the licensing period for all foreign and alien insurance companies, operating in the State of Illinois, is for the year beginning July 1, which, according to our information, is the same licensing period as in the State of Maryland.

"According to correspondence which we received from one of our domestic companies here in the State of Illinois, we are informed that the State of Maryland charged them the fee of $10.00 for their Certificate of Authority authorizing them to do business from July 1, 1941 to June 30, 1942. Thus, it appears that Maryland, in taxing our companies, assessed them on the basis of their new law."

The fee in question was not due until July 1941, but was paid on or about March 14, 1941 in response to a statement submitted by the Department of Insurance on or about February 1. There is no question that had the claimant waited until June to make the tax payment, the amount due under the law would have been $10.00 instead of $300.00, and that Illinois corporations doing business in the State of Maryland for the same period were charged the fee of $10.00 for a Certificate of Authority to do business in that State.

Respondent, by the Attorney General, vigorously opposes a refund and has filed an extensive brief, citing many cases and contending that there is no basis in law, or in equity, wherein this court could allow a refund. This position is predicated on the theory that the fee was paid under a mistake of law, and the authorities cited go to this point. We believe, however, that none of the cases cited are applicable to the present claim. The facts are unusual and entirely different from any case that has been called to our attention.

With the position taken by respondent, that where a tax is paid voluntarily and under a mistake of law the same cannot be recovered back, we are in accord. This court has, however, been consistent in holding that where taxes are paid under a mistake of fact, the same are recoverable. In our former opinion filed herein, we said the fee in this case was not paid with a full knowledge of the facts, as claimant was not in a position to know that the State of Maryland would change its laws prior to the beginning of the tax period, or July 1st. The fact that the Legislature of the State of Maryland would amend its laws and reduce the license fee was a fact that could not be charged to the knowledge of claimant before the legislative act took place. Section 444 of the Illinois Insurance Code requires the fee to be charged foreign corporations doing business in Illinois to be the same as the fee charged to Illinois corporations doing business in the other state. Illinois corporations doing business in the State of Maryland were charged $10.00 for the period in question and Maryland corporations doing business in Illinois were charged a like sum. Claimant made its payment long before it was due and without the knowledge that the law was to be changed, and to deny a refund to claimant would not only penalize the early payment of taxes but would change the position that we have always taken that a tax payable under a mistake of fact is recoverable.

In a very early opinion of this court, in the case of *Big Four Wilmington Coal Company* vs. *State,* 4 C. C. R. 279, it was held that where an overpayment of tax was paid by a mistake of fact reimbursement should be made for the overpayment.

In the case of *Importers and Exporters Insurance Company of New York* vs. *State,* 5 C. C. R. page 1, it was held that the overpayment of a tax was a mistake of fact and not a mistake of law.

In the case of *Moorman Manufacturing Company* vs. *State,* 8 C. C. R. 106, claimant made a payment of $25.00 to the Division of Foods and Dairies for registration fee when there was no law requiring such a fee to be paid. The court, in that case, allowed a refund and cited the rule covering such payments set forth in 48 Corpus Juris, page 759, as follows:

"As a general rule, a payment made under a mistake of fact, and which the payor was under no legal obligation to make, may be recovered back, even though made during the pendency of a suit on demand. The right of recovery under such circumstances is known to the civil and Roman law, as well as to the common law, and is bottomed upon the equitable doctrine that an action will lie for the recovery of money received by one to whom it does not in good conscience belong, the law presuming a promise to repay. The rule applies to payments made to or by public and governmental agencies as well as private persons;" also on page 765 as follows: "Where one by mistake of fact pays more than is due upon a debt or obligation, he may recover the overpayment."

The same rule was followed in the case of *Bates Valve Bag Corporation* vs. *State,* 7 C. C. R. 64, and in *Read* vs. *State,* 8 C. C. R. 200.

In the case of *Richard Seibert* vs. *State,* 9 C. C. R. 253, claimant paid a tuition fee of $25.00 to the Southern Illinois Normal University, Carbondale, Illinois. The payment was for tuition. Claimant held a scholarship, which had been "overlooked" and the court held that claimant was entitled to a refund of the tuition paid, holding that the same was a mistake of fact.

In the case of *Vera Nordstrand* vs. *State,* 10 C. C. R. 185, claimant paid $58.33 for the issuance of a license and later, by her agent, again paid a like sum for the same license. The court held this was a mistake of fact and entitled claimant to a refund.

It is our opinion that in this case payment was made under a mistaken set of facts and, as such, entitled claimant to a refund of the excess payment.

An award is, therefore, entered in favor of claimant, Eureka-Maryland Assurance Corporation, in the sum of Two Hundred Ninety Dollars ($290.00).

MR. JUSTICE ECKERT dissenting:

The law is well settled that a tax voluntarily paid can not be recovered in the absence of a statute authorizing such recovery. *Oswald Jaeger Baking Company* vs. *State of Illinois,* 11 C. C. R. 119; *Orchard Theater Corporation* vs. *State of Illinois,* 11 C. C. R. 271. Furthermore, this court has held in a long line of decisions that an award can not be made solely on the basis of equity and good conscience and can be made by this court only where claimant would be entitled to redress against the State either at law or in equity if the State were suable. *Crabtree* vs. *State,* 7 C. C. R. 207; *Garbutt* vs. *State,* 10 C. C. R. 37.